

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

**ENTERED**
**10/05/2009**

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| BEACH DEVELOPMENT, LP, | ) | CASE NO. 03-80223-G3-7 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| RAMPART RESOLUTION | ) | |
| GROUP, LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ADV. NO. 09-8003 |
| | ) | |
| RANDY WILLIAMS, TRUSTEE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

The court has held a trial in the above captioned adversary proceeding.

In the instant adversary proceeding, Rampart Resolution Group, L.L.P. ("Rampart") seeks an order enjoining Kent B. Hytken[1] and HPGP, LLC ("HPGP") from pursuing in state court claims that Rampart asserts were sold to it by the bankruptcy estate of Beach Development, LP ("Debtor"). Rampart seeks a declaratory judgment determining that all the causes of action asserted in the state court suit are the same causes of action that were sold to Rampart.

---

[1]Except with respect to notations identifying "Robert Hytken" or "Frank Hytken," references to "Hytken" indicate Kent B. Hytken.

The following are the Findings of Fact and Conclusions of Law of the court.  A separate conforming Judgment will be entered.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on March 4, 2003.  On January 28, 2004, the court ordered appointment of a Chapter 11 Trustee.  On August 27, 2004, the case was converted to Chapter 7.  Randy W. Williams is the Chapter 7 Trustee.

On March 17, 2003, Source One Capital Group, L.L.C. ("SourceOne") filed a motion for relief from stay, with respect to seven tracts of land located in Galveston County, Texas. After a contested hearing, the court entered judgment granting the motion for relief from stay on May 13, 2003. (Docket No. 35, Case No. 03-80223-G3-7).

The parties have stipulated that, on July 1, 2003, SourceOne foreclosed on the property.  (Stipulation No. 14, Docket No. 47).

Although Debtor was represented by counsel in the Chapter 11 case, on May 23, 2003, Hytken, purportedly on behalf of Debtor, filed a notice of appeal of this court's May 13, 2003

2

order lifting stay.   (Docket No. 42, Case No. 03-80223-G3-7).

On June 30, 2003, while Hytken's appeal of this court's order lifting the stay was pending, and one day before the date of the foreclosure sale of the property, Hytken filed a voluntary petition under Chapter 11 of the Bankruptcy Code on behalf of HPGP, the general partner of the Debtor whose sole member is Hytken.  (Stipulation No. 13, Docket No. 47).

On September 26, 2003, on motion filed by Marisa Gayne (Hytken's former spouse) in the 312th Judicial District Court of Harris County, Texas, that court appointed a receiver for Hytken. The judgment appointing the receiver divested Hytken of his interests in Debtor and HPGP.  (Docket No. 397, Case No. 03-80223-G3-7).

On November 26, 2003, the United States District Court dismissed Hytken's appeal of this court's order lifting the stay, for failure of Hytken to submit the appeal record.  (Docket No. 5, C.A. No. 03-2172).

The HPGP Chapter 11 case was dismissed, by order entered January 28, 2004.  (Docket No. 24, Case No. 03-80779-G3-11).

On August 26, 2004, Hytkens Partnership No. 1 LLC ("HP1") filed a motion seeking an order authorizing it to purchase "any and all claims to the Property, including but not limited to, unlawful foreclosure, the Bankruptcy Estate may have

3

against Source One, its predecessors and successors-in-interest."
(Docket No. 144, Case No. 03-80223-G3-7).

On August 27, 2004, the Beach Development LP case was
converted from Chapter 11 to Chapter 7.  Williams, who had been
appointed as the Chapter 11 trustee, remained as the Chapter 7
trustee.  On the same date, Williams, noting that he had begun
"receiving demands by Kent Hytken to sue Source One for its
foreclosure of the Beach Development property," filed a motion
seeking to conduct an auction as to the "claims of the estate
against Source One, its predecessors and successors-in-interest,
related to the Property, including but not limited to claims for
wrongful or unlawful foreclosure."  (Docket No. 149, Case No. 03-
80223-G3-7).

On November 23, 2004, this court granted the motion to
permit Williams to conduct an auction, and denied the motion of
HP1 to compel Williams to sell the claims to it.  (Docket Nos.
198, 199, Case No. 03-80223-G3-7).

On January 5, 2005, Williams filed a motion to confirm
the sale of the claims to Rampart, for $50,000.  In the motion,
Williams noted that HP1 and Rampart were present as eligible
bidders.  He stated that HP1 bid $350,000, and that Rampart
became a back-up bidder for $50,000.  Williams stated in the
motion that HP1 failed to close its purchase of the claims, and
thus he sold the claims to Rampart.  (Docket No. 204, Case No.

4

03-80223-G3-7).

Williams' motion to confirm the sale drew objections from Frank Hytken (Docket No. 207, Case No. 03-80223-G3-7) and from Robert Hytken, purportedly on behalf of HP1.[2] (Docket Nos. 209, 210, Case No. 03-80223-G3-7).

On January 31, 2005, Robert Hytken, again purportedly on behalf of HP1, filed a motion to cancel the auction, asserting that the bid procedure was changed immediately prior to the auction, without the knowledge and consent of HP1's attorney.[3] (Docket No. 213, Case No. 03-80223-G3-7).

On February 15, 2005, Leonard Simon appeared as counsel, on behalf of Kent B. Hytken and Robert Hytken.[4]  (Docket No. 223, Case No. 03-80223-G3-7).

After the court held a status conference, at which Simon appeared on behalf of Hytken, the court determined that the change in auction procedures at the last minute justified the conduct of a new auction.  (Docket No. 346 Case No. 03-80223-G3-7).

---

[2]There is no indication that Robert Hytken was an attorney.

[3]The court notes that Robert Hytken filed this pleading himself, rather than through HP1's attorney.

[4]Although Simon continued to represent Robert Hytken and Hytken's A Partnership, such representation is not pertinent to the instant adversary proceeding.  Accordingly, except for identifying the proposed compromise addressed at the hearing on May 23, 2006, the court's further references to Simon's appearances omit his representation of parties other than Kent B. Hytken.

The court issued auction procedures, requiring, <u>inter alia</u>, that bidders be qualified, that any dispute regarding qualification of bidders be presented to the court prior to the auction, and that a hearing be held on the proposed sale. (Docket No. 350, Case No. 03-80223-G3-7).

On May 5, 2006, Williams filed a notice setting forth the qualified bidders.  Rampart was the only qualified bidder. (Docket No. 358, Case No. 03-80223-G3-7).

On behalf of Hytken, Simon filed an objection to the trustee's identification of the eligible bidders.  (Docket No. 360, Case No. 03-80223-G3-7).

On May 9, 2006, the court conducted a hearing on the question of which bidders were eligible.  The court determined that the Hytkens were not eligible bidders.[5]  (Docket No. 364, Case No. 03-80223-G3-7).

Williams conducted the auction on May 10, 2006. Rampart bid $301,000.  Williams filed a notice, reporting the results of the auction.  (Docket No. 365, Case No. 03-80223-G3-7).

The hearing to confirm the sale to Rampart was scheduled, pursuant to the judgment setting the bidding procedures, for May 23, 2006.  (Docket No. 350, Case No. 03-80223-G3-7).

---

[5]Due to an emergency, the May 9, 2006 hearing was conducted by the Honorable Marvin Isgur, United States Bankruptcy Judge.

Concurrently with the procedures relating to the auction, Williams had filed, on May 5, 2006, a motion to compromise. The compromise agreement attached to the motion purported to address issues raised by Williams, Gayne, the receiver, Kent Hytken, Robert Hytken, and Hytkens A Partnership, raised in multiple cases and proceedings, including claim objections between the receiver and the Hytkens and several related motions for summary judgment, motions for sanctions, the receivership itself, and civil and criminal proceedings related to the divorce between Hytken and Marisa Gayne. (Docket No. 359, Case No. 03-80223-G3-7). The motion to compromise was set for hearing on May 23, 2006, the same date as the date set for approval of the sale of the estate's claims against SourceOne to Rampart.

On May 23, 2006, the court held a hearing on the motion to sell, and on the motion to compromise. Simon was present, as counsel for Hytken. At the hearing on May 23, 2006, counsel for Johnston (the receiver appointed by the state court) announced that Johnston was no longer seeking approval of the compromise. Counsel for Johnston argued that the Hytken Parties had taken actions inconsistent with the proposed compromise in one of the state courts. In light of Johnston's withdrawal from the proposed compromise, the Trustee elected not to pursue approval of the compromise. This court held that the compromise could not

7

be approved without all parties.  The court denied approval of
the compromise.  (Docket No. 431, Case No. 03-80223-G3-7).

　　　　At the May 23, 2006 hearing, Williams testified that
Rampart had increased the price it was prepared to pay from
$301,000 to $360,000.  (Docket No. 431).  Simon was present, but
did not question Williams regarding the increase in the sale
price.

　　　　The court signed an order approving the sale.  (Docket
No. 369, Case No. 03-80223-G3-7).  The order approving the sale
provides in pertinent part:

> 4.  The bidding procedures set forth in the Judgment
> have been complied with by the Trustee and Rampart
> Resolution Group, L.L.C. in all respects.  Creditors,
> parties in interest and other entities have been
> afforded a reasonable and adequate opportunity to bid
> for the Claims.
>
> 5.  The Trustee and Rampart Resolution Group, L.L.C.
> have each acted in good faith as defined in 11 U.S.C. §
> 363(m).  The sale was negotiated at arms-length between
> two commercially sophisticated entities.  As a result
> of the foregoing, the Trustee and Rampart Resolution
> Group, L.L.C.  are entitled to the protection of
> Section 363(m) of the Bankruptcy Code.  Nothing in this
> Order conditions the sale of the Claims on the outcome
> of any appeal.
>
> 6.  No party in interest has engaged in any conduct
> that would cause or permit the sale of the Claim o be
> voided under Section 363(n) of the Bankruptcy Code.[6]

　　　　On May 31, 2006, Hytken moved for reconsideration of

---

[6]The language of Paragraph 6 is quoted directly and in full.
The court interprets Paragraph 6 to determine that no party
engaged in conduct that would cause the sale of the Claims to be
voided.

8

the order approving the sale.  (Docket No. 371, 03-80332-G3-7).
Simon had remained silent regarding the increase in Rampart's bid
at the hearing on the motion to sell.  However, in seeking
reconsideration, he asserted on behalf of Hytken that counsel for
Rampart and the receiver "had a conversation in which they agree
that Rampart would increase its bid by $59,000, and in exchange
for such increased bid, the Receiver would appear in Court the
next day through his attorney...and announce his decision to
abandon the compromise and support the sale of the causes of
action to Rampart."  (Docket No. 372, 03-80332-G3-7).

         As this court noted in its Memorandum Opinion of June
14, 2006, addressing the motion for reconsideration of the order
approving the sale to Rampart:

> The proposed settlement agreement provided, inter alia,
> that claims pending in the Galveston County case were
> not compromised, and that the proposed settlement did
> not purport to settle Johnston's[7] claims in that suit.
> However, at the state court hearing on May 22, 2006,
> counsel for Kent Hytken announced that Kent Hytken
> anticipated seeking dissolution of the receivership as
> soon as the proposed compromise was approved, thus
> depriving Johnston of standing to bring the causes of
> action pending before the state court. Counsel for
> Johnston (who also represented Johnston in the state
> court, and was present at the May 22, 2006 hearing)
> reasonably viewed this announced action to be
> inconsistent with the settlement whose approval this
> court was set to consider the next day.

(Docket No. 377, 03-80332-G3-7).

_____

         [7]Richard Johnston was the initial receiver appointed by the
state court, and remained the receiver on the date of the hearing
on the motions to approve the sale and the compromise.  William
Carroll subsequently was appointed as a substitute receiver.

By order entered June 14, 2006, this court denied
reconsideration of the order approving the sale. (Docket No.
376, 03-80332-G3-7). Hytken appealed to the District Court.
(Docket No. 381, 03-80332-G3-7). The District Court dismissed
the appeal as moot. (Docket No. 25, C.A. No. 06-2169).

Hytken appealed to the Fifth Circuit Court of Appeals
the District Court's ruling dismissing as moot his appeal of this
court's orders granting approval of the sale and denying a new
trial. In its per curiam opinion affirming the ruling of the
District Court, entered on June 30, 2008, the Fifth Circuit
noted:

> It is uncontested that the sale was not stayed pending
> appeal. Nor have the Hytken parties demonstrated that
> the bankruptcy court's finding of good faith was
> clearly erroneous. The Bankruptcy Code does not define
> "good faith" for the purposes of § 363(m). We have
> stated that an appropriate characterization of good
> faith in a bankruptcy sale is a lack of "fraud,
> collusion between the purchaser and other bidders or
> the trustee, or an attempt to take grossly unfair
> advantage of other bidders." In re Bleaufontaine,
> Inc., 634 F.2d 1383, 1388 n.7 (5th Cir. 1981) (quoting
> In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th
> Cir. 1978)). The Hytken parties contend that Rampart
> increased its bid in a secret agreement with a receiver
> appointed in state court litigation between Kent Hytken
> and his ex-wife, Marisa Gayne. The Hytken parties
> contend that Rampart increased its bid in order to
> sabotage a proposed settlement between the Hytken
> parties, the state court receiver, the bankruptcy
> trustee, and Gayne. Even if this allegation had been
> proved, there is still no proof of fraud or collusion
> between Rampart and the trustee, that any fraudulent
> conduct attended the sale of the claims, or that unfair
> advantage was taken of any other bidder.

10

(See Docket No. 34, C.A. No. 06-2169).


     While Hytken's appeal of this court's orders approving
the sale of claims against SourceOne and denying Hytken's motion
for new trial were pending, Hytken and HPGP filed suit in the
122nd Judicial District Court of Galveston County, Texas, against
SourceOne, the receiver, Gayne, and Scott Williams.[8]
(Stipulation No. 28, Docket No. 47).

     In the second amended petition in the state court case,
HPGP and Hytken assert causes of action for wrongful foreclosure,
and tortious interference with a contractual agreement.  As to
the wrongful foreclosure argument, HPGP and Hytken assert:  "The
wrongful foreclosure should be set aside and the property
returned to its proper owner, Beach Development, LP."
(Plaintiff's Exhibit 27).

     HPGP and Hytken have stipulated that their sole basis
for a wrongful foreclosure claim "is that the foreclosure
occurred in violation of the automatic stay under section 362 of
the Bankruptcy Code as a result of the HPGP bankruptcy case."
(Stipulation No. 32, Docket No. 47).

     HPGP and Hytken have stipulated that their basis for a
tortious interference claim is SourceOne's alleged interference
with Hytken's attempts to purchase the bankruptcy estate's

---

     [8]Scott Williams was the attorney who represented Gayne, and
later represented the receiver.

wrongful foreclosure claims against SourceOne.  (Stipulation Nos. 33, 34, Docket No. 47).

## Conclusions of Law

As the court noted in its Memorandum Opinion of April 2, 2009, this court retains subject matter jurisdiction to interpret its own order of May 23, 2006 approving the sale of the estate's claims to Rampart.  (Docket No. 18).

Claim preclusion prevents re-litigation of claims that have been finally adjudicated, or that arise out of the same subject matter and could have been litigated in the prior action. Barr v. Resolution Trust Corp., 837 S.W.2d 627 (Tex. 1992).

The elements of claim preclusion are a prior, final judgment on the merits by a court of competent jurisdiction; an identity of parties or those in privity with them; and a second action based on the same claims that were raised or could have been raised in the first action.  Amstadt v. U.S. Brass Corp., 919 S.W.2d 644 (Tex. 1996).

Issue preclusion prevents a party from re-litigating a particular fact issue the party has already litigated and lost in an earlier suit.  Quinney Elec., Inc. v. Kondos Entertainment, Inc., 988 S.W.2d 212 (Tex. 1999).

A party seeking to assert the bar of issue preclusion must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first

action, (2) those facts were essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action.  <u>Sysco Food Serv., Inc. v. Trapnell</u>, 890 S.W.2d 796 (Tex. 1994).

With respect to the wrongful foreclosure claims asserted by HPGP and Hytken, they lack any personal claim.  Under the Tex. Rev. Limited Partnership Act, Art. 6132a-1 § 7.01, "[a] partner has no interest in specific limited partnership property."  Thus, although HPGP and Hytken each had an interest in Beach Development,[9] neither had a property interest in the real property foreclosed by SourceOne.  Accordingly, neither can assert on their own behalf a wrongful foreclosure claim.  The court concludes that the causes of action, if any, for wrongful foreclosure, were property of the Beach Development bankruptcy estate.  The Chapter 7 Trustee has sold the estate's claims to Rampart.

With respect to the tortious interference claim asserted by Hytken, this court's order finding that the sale was in good faith, together with the opinion of the Fifth Circuit court of appeals determining that this court's finding of good faith implies a finding of a lack of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to

---

[9]The court notes that, at various times, Hytken was divested of his interests in Beach Development and HPGP.  However, he apparently believes he has reacquired those interests.

13

take grossly unfair advantage of other bidders" precludes Hytken's asserting for a second time that SourceOne interfered with Hytken's attempts to purchase the bankruptcy estate's claims against SourceOne by inducing the receiver to withdraw from the proposed settlement.  Moreover, this court's finding, on the motion for reconsideration, that the receiver's justification for withdrawing from the compromise was reasonable, also precludes Hytken's claim that the receiver's withdrawal from the compromise was tortiously procured by SourceOne.

Hytken and HPGP cite the Anti-Injunction Act, 28 U.S.C. § 2283 for the proposition that this court may not enjoin an action of the state court.  That statute provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

The express language of the Anti-Injunction Act allows this court to enjoin a state court proceeding to protect or effectuate its judgments.  This court has determined that the causes of action, if any, for wrongful foreclosure, were property of the Beach Development bankruptcy estate, and not personal to Hytken or HPGP.  Under the principle of claim preclusion, this court's orders approving the sale and denying Hytken's motion for reconsideration dispose of Hytken's claims of tortious

14

interference.  In order to effectuate this court's previous judgments, this court may enjoin the prosecution of the state court suit.[10]  The court concludes that the requested declaratory judgment and injunction should be issued.

Based on the foregoing, a separate Judgment will be entered, enjoining HPGP and Hytken from proceeding in the state court on their claims for wrongful foreclosure and tortious interference.

Signed at Houston, Texas October 5, 2009.


_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

---

[10]The court notes, however, that the result may have been different if the state court had interpreted the matters addressed in this court's previous rulings prior to this court's action to enjoin HPGP and Hytken from proceeding in state court. See Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986) (once the state court has finally rejected a claim of res judicata based on prior federal judgment, then Full Faith and Credit Act becomes applicable and federal courts must turn to state law to determine preclusive effect of state court's decision).